## PEOPLE v. BROMWICH.

(Supreme Court, Appellate Division, First Department. December 3, 1909.)

1. INDICTMENT AND INFORMATION (§ 160*)—AMENDMENT TO MEET PROOF.

Under Code Cr. Proc. § 293, providing that, upon trial of an indictment, should any variance between the allegation and the proof in respect to time, name, or description of any place, person, or thing appear, the court may, in its judgment, if accused cannot be thereby prejudiced in his defense on the merits, direct the indictment to be amended according to the proof, on such terms as to postponement of the trial as the court may deem reasonable, an indictment for false registration, which by a clerical error misstated the number of the assembly district in which accused was alleged to have registered, could be amended to correct the error.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 515; Dec. Dig. § 160.*]

2. CRIMINAL LAW (§ 662*)—TRIAL—RIGHT OF ACCUSED TO BE CONFRONTED WITH WITNESSES—CONSTITUTIONAL PROVISIONS.

Const. U. S. Amend. 6, providing that in criminal prosecutions accused shall enjoy the right to be confronted with witnesses against him, applies to criminal prosecutions in the federal courts only.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3; Dec. Dig. § 662.*]

3. CRIMINAL LAW (§ 662*) — TRIAL — RIGHT OF ACCUSED TO BE CONFRONTED WITH WITNESSES—STATUTORY PROVISIONS.

Bill of Rights, Rev. St. pt. 1, c. 4, § 14, now Consol. Laws, c. 6, § 12, provides that in all criminal prosecutions accused has a right to be con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fronted with the witnesses against him. Code Cr. Proc. § 392, provides that the rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in said Code. Code Civ. Proc. § 921, provides that, where the officer, to whom the legal custody of a paper belongs, certifies under his hand and official seal that he has unsuccessfully searched in his office for the paper, the certificate is presumptive evidence of the fact so certified, as if the officer personally testified to the same. Code Cr. Proc. § 8, subd. 3, provides that in a criminal action, accused is entitled to be confronted with the witnesses against him in the presence of the court, with immaterial exceptions. Sections 636 to 643, relating to the examination of witnesses on commission, does not provide for a commission by the people to take testimony without the state, except in those instances where a commission is obtained by accused, in which case the people are permitted to join in the commission and examine witnesses in support of the indictment. *Held,* that in a prosecution for illegal registration, it being alleged that accused was not a United States citizen, though the people could not have obtained a commission to examine the clerks of courts empowered to naturalize citizens in the place without the state where accused claimed he was naturalized, yet the certificates of such officers that they had examined the records in their courts, and had failed to find therein any declaration of intention of accused to become a citizen, or any record of his naturalization, were inadmissible, as contravening accused's right to be confronted with the witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1538–1548; Dec. Dig. § 662.*]

Appeal from Court of General Sessions, New York County.

Thomas E. Bromwich was convicted of false registration, and he appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, Mc-LAUGHLIN, LAUGHLIN, and CLARKE, JJ.

William E. Morris, for appellant.
Amos H. Stephens, Deputy Atty. Gen., for the People.

LAUGHLIN, J.   The indictment charged the defendant with the crime of false registration, in registering in the Fifteenth election district of the "Thirty-First" assembly district of the county of New York on the 12th day of October, 1907, for the general election to be held on the 5th day of November thereafter; he not being at the time a citizen of the United States or a resident of that election district.   By a clerical error in the indictment, the number of the assembly district in which the defendant registered was erroneously stated to be the "thirty-first" when it was the "thirty-fifth."   On this appearing shortly after the commencement of the trial, the Attorney General moved to amend the indictment by substituting the word "thirty-fifth" for the word "thirty-first" in the designation of the assembly district.   Counsel for the defendant objected on the ground that the court was without authority to allow the amendment, and in answer to questions put by the court also claimed that the amendment would prejudice the rights of the defendant on the merits, and that he was taken by surprise.   The court granted the motion to amend, and offered to give the defendant an adjournment to prepare to meet the indictment as amended.   An exception was duly taken by the defendant, and his counsel stated that he asked for no adjournment.   That exception is

urged as ground for reversal, and, since it goes to the merits, we should express an opinion thereon.

Section 293 of the Code of Criminal Procedure provides as follows:

"Upon the trial of an indictment, when a variance between the allegation therein and the proof, in respect to time, or in the name or description of any place, person or thing, shall appear, the court may, in its judgment, if the defendant can not be thereby prejudiced in his defense on the merits, direct the indictment to be amended, according to the proof, on such terms as to the postponement of the trial, to be had before the same or another jury, as the court may deem reasonable."

The amendment related to the description of the place where the crime was committed, and we are of opinion that it was clearly authorized by this section.

The people presented evidence tending to sustain the false registration, upon the issues presented by the indictment and the plea of not guilty, both with respect to whether the defendant was a citizen and entitled to register anywhere, and with respect to whether he was a resident of the election district in which he registered and would be such for the period of 30 days prior to the election. The evidence was sufficient to sustain the conviction on the ground that the defendant was not a resident of the district; but the evidence was conflicting upon that point, and both issues were submitted to the jury. It cannot be known, therefore, from the verdict, but that the conviction was upon the ground that the defendant was not a citizen of the United States.

Upon the issue of citizenship the people offered a deposition made by the defendant before the inspectors of election at the time he registered, in which he stated, among other things, that he was 45 years of age, that he was born in England, that he was naturalized at Bridgeport, Conn., in the year 1887, and that he had never before voted. The people then called two deputy superintendents of election to testify to an interview between them and the defendant at the time one of them served a subpœna upon him to attend forthwith before the state superintendent of elections on the 29th day of the month in which he registered. Their testimony was in substance that he stated that he had his first papers, but not his second papers, that he received his first papers in Bridgeport, and that he said "something about his papers being burned in a fire," and that the captain of the election district promised to have his papers for him on election day; but neither of them testified that he expressly stated that he ever obtained his second papers, and they did not ask him any questions. Their testimony did not clearly show an admission on the part of the defendant that he never obtained his first papers, and it was open to the construction that he meant that he still had his first papers, and that his second papers had been destroyed by fire. The people then proved the courts which were authorized to naturalize citizens in Bridgeport, Conn., and offered in evidence a certificate from the clerk of each of the courts, under his hand and the seal of the court, and in some instances exemplified by the presiding justice of the court, and in some instances not exemplified at all, to the effect that he had examined the records of the court from the year 1875 to December, 1907, and failed to find

in said records any declaration of intention of Thomas Ernest Bromwich to become a citizen, or any record of his naturalization.

The defendant objected to the reception of these certificates, on the ground that they were incompetent, and that they purported to certify to what was not in court records, and should not be received without first calling the witness who made them to testify to the search which he made, and that they were not properly exemplified, and, after several had been admitted, the further objection was taken that the witness should be produced, so that he could be cross-examined; but the objection was not taken that it was in violation of his right to be confronted with the witness. After the people rested their case, counsel for defendant requested the court to take from the jury the question of citizenship, on the ground that the corpus delicti could not be proved by admissions of the defendant, and that the certificates could not be deemed proof of the facts certified without contravening defendant's right, guaranteed by the federal and state Constitutions, to be confronted by his accusers; but neither were the provisions of the Bill of Rights nor of section 8 of the Code of Criminal Procedure drawn to the attention of the trial court by the deputy Attorney General who then represented the people, nor have they been drawn to our attention or discussed by either counsel on the appeal. The objections were overruled and the certificates were received and read in evidence.

We are of opinion that this was error. Counsel for the people contends that the certificates were competent under the provisions of section 921 of the Code of Civil Procedure, which provides as follows:

"Where the officer, to whom the legal custody of a paper belongs, certifies under his hand and official seal, that he has made diligent examination in his office, for the paper, and that it cannot be found, the certificate is presumptive evidence of the fact so certified, as if the officer personally testified to the same."

Reliance is placed on section 392 of the Code of Criminal Procedure, which provides as follows:

"The rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in this Code."

It is at least doubtful whether the Legislature intended that the provisions of section 921 of the Code of Civil Procedure should apply to certificates made without the jurisdiction of this state. There is room for argument that, if the Legislature had intended to allow the use of certificates of this nature, which are not very satisfactory evidence, and are open to mistakes, if not abuse, made without the state, it would have required that the signature of the clerk and the seal of the court be authenticated. There is no limitation in the provisions of the section, and, if they were not intended to apply to certificates made within the state only, then they authorize the use of such certificates made anywhere in the world. Moreover, even if that section were applicable, it is not entirely clear that these certificates contained evidence of the nature authorized by its provisions, and it is manifest that in some respects the evidence they contain would not be authorized; for they relate, in part, at least, not to the inability of the clerk to find a record, but to the contents of the records found. If it had

been intended that this section should apply to certificates from all over the world, it would seem that the Legislature would have taken the precaution to have required that they be exemplified in a manner that would tend to insure their genuineness and reliability, as was done by the Congress with respect to the "public acts, records and judicial proceedings" of other states, to which each state, by virtue of section 1 of article 4 of the federal Constitution, is required to give full faith and credit.   See Trebilcox v. McAlpine, 46 Hun, 469.

It may be further observed that it is improbable that the Legislature intended to provide for the admission in evidence of certificates from other states and countries other than those for which Congress has provided, although, of course, it would be competent for the Legislature to enact less stringent rules if it saw fit; but it could not require more than is required by the federal Constitution and acts of Congress, so far as they are applicable.   The fact that the Legislature has not attempted to provide for the admission in evidence of the judicial records and proceedings of other states, but has left that entirely to be governed by the provisions of the federal statutes, and has merely provided for the authentication of such records from foreign countries (Code of Civil Procedure, §§ 952, 953; Trebilcox v. McAlpin, supra; Van Deventer v. Mortimer, 56 Misc. Rep. 650, 107 N. Y. Supp. 564), is significant as indicating that the provisions of this section do not relate to certificates made without the state.

In the view we take of the case, however, it is not necessary to decide that question on this appeal.   Our state Constitution contains no provision similar to the sixth amendment of the federal Constitution, which provides as follows:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusations, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

It has been held by the Court of Appeals that this provision of the federal Constitution applies to criminal prosecutions in the federal courts only, and that a defendant in a criminal prosecution in a state court is not entitled to the benefit thereof.   People v. Fish, 125 N. Y. 136, 151, 26 N. E. 319.   The same protection that is afforded by the federal Constitution to a defendant in a criminal prosecution in the federal courts is afforded by our Bill of Rights (Rev. St. pt. 1, c. 4, § 14, now Consol. Laws, c. 6, § 12) to a defendant in a criminal prosecution in the courts of this state.   That provision of our Bill of Rights is as follows:

"In all criminal prosecutions, the accused has a right to a speedy and public trial, by an impartial jury, and is entitled to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, and to have compulsory process for obtaining witnesses in his favor."

Cooley, in his work on Constitutional Limitations (7th Ed., p. 450), says:

"The testimony for the people in criminal cases can only, as a general rule, be given by witnesses who are present in court. The defendant is entitled to be confronted with the witnesses against him, and if any of them be absent from the commonwealth, so that their attendance cannot be compelled, or if they be dead, or have become incapacitated to give evidence, there is no mode by which their statements against the prisoner can be used for his conviction. The exceptions to this rule are of cases which are excluded from its reasons by their peculiar circumstances; but they are far from numerous."

See, also, note 1, p. 450, Cooley, supra, and People v. Lambert, 5 Mich. 349, 72 Am. Dec. 49.

There being no guaranty in this regard in our Constitution, it would be competent for the Legislature, which enacted the Bill of Rights, to make exceptions thereto; and since the Legislature has provided that the rules of evidence shall be the same in criminal as in civil cases, if the provisions of section 921 of the Code of Civil Procedure authorize the reception in evidence of a certificate made without the state, there might be room for argument that this should be regarded as an exception to the Bill of Rights. Any doubt there might be on that point is removed by the provisions of section 8 of the Code of Criminal Procedure, which so far as material are as follows:

"In a criminal action the defendant is entitled: * * * (3) To produce witnesses in his behalf, and to be confronted with the witnesses against him in the presence of the court, except that where the charge has been preliminarily examined before a magistrate, and the testimony reduced by him to the form of a deposition in the presence of the defendant, who has, either in person or by counsel cross-examined, or had the opportunity to cross-examine, the witness, or where the testimony of a witness on the part of the people, has been taken according to the provisions of section two hundred and nineteen of this Code, the deposition of the witness may be read upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found in the state."

The admission of these certificates in evidence is not authorized by any of the exceptions contained in this subdivision. Moreover, it is to be borne in mind that no commission may be had by the people for the purpose of taking testimony without the state, except in those instances where a commission is obtained by the defendant, in which cases the people are permitted to join in the commission and to examine witnesses in support of the indictment. Code Cr. Proc. §§ 636–643, inclusive.

It is therefore clear that the people could not have obtained a commission to examine the clerks of these courts at Bridgeport, Conn.; and since the clerks of the courts could not have given testimony without the state, even with the privilege to the defendant of cross-examining them, it would seem to follow that their certificates could not be given greater weight than their testimony with the records before them, for the certificates in these instances are not certificates with respect to what was found in the records, but certificates as to what was not found, and therefore they necessarily depend upon the acts of the clerks who made them, and their weight and value depend upon the diligence of the searches made by them. It would be competent to prove the fact by the testimony of the witness, but not by his certificate. City of Beardstown v. City of Virginia, 81 Ill. 541. Furthermore, it is to be noted that the rules of evidence in civil cases are only

made applicable to criminal cases where it is not otherwise provided in the Code of Criminal Procedure, and even though in a civil case the certificates might be admitted in evidence, by the express terms of the provisions of section 8 of the Code of Criminal Procedure their admission in evidence in a criminal case contravenes the rights of the defendants to be confronted with the witnesses.

It may be said that this decision will render it difficult to prove that a person was not naturalized in another state. The answer to that objection is that it will be no more difficult than in other criminal prosecutions, in which the issuance of commissions in behalf of the people has not yet been authorized, and, moreover, the inspectors of election are authorized to require the production of naturalization papers, or certified copies, and could not be compelled to register without one or the other, unless other evidence which satisfies a majority of them of his right to register is presented to them. Election Law (being chapter 909, p. 915, Laws 1896) § 34, subd. 8, now Consol. Laws, c. 17, § 174.

It follows, therefore, that the conviction must be reversed, and a new trial granted.

PATTERSON, P. J., and CLARKE, J., concur. INGRAHAM and McLAUGHLIN, JJ., concur in result.